### Lamb, Treasurer, *v.* Rawles, Executor.

Tax.—*Statute Construed.*—The word "demands" in the third clause of the twenty-third section of the act to provide for the valuation and assessment of real and personal property and the collection of taxes, &c., 1 G. & H. 68, relates only to such demands as the law will recognize and enforce; and no contract by which a liability is created after the first day of January can relate back so as to make the creditor liable to be taxed for that year for such demand.

APPEAL from the Fountain Circuit Court.

Elliott, J.—This was a suit commenced by Robert Hetfield against William Lamb, treasurer of Fountain county, to enjoin the collection of certain taxes, claimed to have been illegally assessed against Hetfield.

During the pendency of the suit, Hetfield died, and it was revived in the name of David Rawles, his executor.

On the final hearing, a perpetual injunction was decreed, in accordance with the prayer of the complaint. Lamb appeals.

The only question made in the case is, that the evidence does not sustain the finding and judgment of the court.

The facts in the case are presented by an agreement made by the parties in the circuit court; which, in substance, is as follows: Some time in November, 1866, Hetfield *orally* agreed to sell his farm of three hundred and twenty acres of land in Fountain county, at forty dollars per acre, to one John Death. No writings were then made, but it was understood between them that the agreement should be consummated at some future date. On the 3d day January, 1867, Death paid Hetfield five thousand dollars on account of the purchase, and executed to the latter his notes amounting to eight thousand eight hundred and eighty-nine dollars, for the residue, payable in four equal annual instalments, without interest; the interest having been calculated from November, 1866, and added to the amount as a part of the principal included in the notes. After the oral agreement in November, 1866, and before the 1st of January, 1867, Death came to Hetfield and proposed to let him have a note for twelve hundred and fifty dollars, on one Carpenter, and twelve hundred and fifty dollars in money, to be held by Hetfield, and to be' accounted for when the sale of the land should be consummated. The trade was consummated on the 3d of January, 1867, when the five thousand dollars just referred to were allowed as a payment on the land, notes executed for the balance as before stated, and at the same time Hetfield executed to Death a title bond, binding him to make a deed for the land, when the notes given for the residue of the purchase-money should be paid.

The note for twelve hundred and fifty dollars on Carpenter was given in by Hetfield to the assessor, and properly charged to him on the tax duplicate for 1867. Hetfield had invested the twelve hundred and fifty dollars in money, received from Death, in other real estate, before the 1st of January, 1867, and consequently did not have it on hand at that date.

Prior to the 1st of January, 1867, Hetfield sold to Death a lot of sheep and some oats and hay, then on the farm,

and permitted the sheep to remain there and be fed with the oats and hay. Hetfield remained in possession of the farm until after January 3d, 1867. The farm was assessed on the tax duplicate for 1867 against Hetfield, though by agreement between him and Death, the latter paid said tax. In addition to the other taxes assessed against Hetfield for 1867, about which there is no controversy, he was charged on the duplicate for that year, without his consent, with twelve thousand dollars, the proceeds of the sale of the farm; on which the taxes levied amounted to four hundred and sixty-three dollars and twenty cents. The duplicate containing said tax was in the hands of Lamb as treasurer, and he was about to proceed to collect the amount by a levy and sale of Hetfield's personal property, and would have done so, but for the restraining order of the court.

It is provided by statute, that "every person shall be listed in the township where he resides when the enlistment is made, for all personal estate owned by him, on the 1st day of January of the year in which the enlistment is made," &c. 1 G. & H. 71, sec. 13. And by the 23d section of the same act, "personal estate" is made to include, among other things, "the value of all demands against any person or body corporate, either within or without this State." The question here is, do the facts stated show that Hetfield, on the first day of January, 1867, held a demand against Death for the price of the farm, or any part of it? We think not. The word "demands," as used in the statute, must be construed to relate only to such legal demands as the law will recognize and enforce. Here it does not appear that Death had either purchased or agreed to purchase the farm until after the 1st of January, 1867. It is stated that Hetfield, in November, 1866, agreed to sell the farm to Death at forty dollars per acre; but it does not appear that Death agreed to purchase it. There does not seem to have been any agreement or understanding between them, at that time, as to the mode or time of payment. The facts stated simply amount to this: Hetfield proposed to sell the farm

at forty dollars per acre; Death did not then agree to make the purchase, but it was understood by both parties that an agreement for its purchase would be consummated at some future time, which, in fact, did occur on the 3d of January, 1867. It seems evident that the terms of the contract were not settled or agreed upon between the parties until the 3d of January, 1867. So that, aside from any question presented by the statute of frauds, there was no definite or binding agreement existing between them in reference to the sale of the farm on the first of January, 1867; and it follows that Hetfield, on that day, held no legal demand against Death on account of the sale of the farm, no such sale having been them made. The subject had been talked of between the parties, and it may be inferred from the facts stated that both of them confidently expected that a contract would be consummated at some future time, but it did not exist on the 1st of January, 1867.

But it is argued that as interest was computed on that part of the purchase-money for which notes were given, from November, 1866, the consummation of the contract on the 3d of January, 1867, related back to November, 1866, and in legal effect, rendered the contract as of that date. This proposition is untenable, as applied to the question before us.

To make Hetfield liable to the assessment, he must have held a legal claim against Death on the 1st of January, 1867; and no subsequent contract between them by which a liability was created, could be made to relate back so as to make him liable to be taxed for what, in fact, he did not possess on that day.

The finding of the court below is also objected to on the ground that it does not appear that Hetfield had paid the taxes legally assessed against him for 1867, and *Roseberry* v. *Huff*, 27 Ind. 12, is cited. That case is not in point here. There it affirmatively appeared that there were legal taxes due against Huff, which he suffered to be returned as delinquent for several years; and the question in the case grew

out of the interest and penalties charged upon them. Here it does not appear that the taxes legally assessed against Hetfield were unpaid. Indeed, it may be reasonably inferred from the record that they were not.

Judgment affirmed, with costs.

*T. J. Davidson*, for appellant.

*W. H. Mallory*, for appellee.